WMN:SLT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JAMES VENTURA and
SOUNG BAE,

        Defendants.

- - - - - - - - - - - - - - - - - X

M-10-596

C O M P L A I N T

(Title 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

    JEFFREY SENN, being duly sworn, deposes and states that he is a Special Agent with the United States Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such:

    Upon information and belief, on or about and between May 1, 2010 and May 25, 2010, within the Eastern District of New York and elsewhere, the defendants JAMES VENTURA and SOUNG BAE, together with others, did knowingly and intentionally conspire to manufacture, distribute and possess with intent to distribute a controlled substance, which offense involved 100 or more marijuana plants, in violation of Title 21, United States Code, 841(a)(1).

    (Title 21, United States Code, Sections 846 and 841(b)(1)(B)(vii))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I, Jeffrey Senn, am a Special Agent with the DEA, duly appointed according to law and acting as such. I have been a Special Agent with the DEA for approximately seven years. During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of numerous taped conversations and records of drug traffickers. Through my training, education and experience -- which has included numerous instances of debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. Among other duties, I have been participating in an investigation relating to the drug trafficking activities of SOUNG BAE and JAMES VENTURA. The investigation has revealed that SOUNG

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

BAE and JAMES VENTURA have established and operated marijuana grow houses at various locations in Queens, New York.

3. In or about May 2010, the DEA received information from a reliable confidential informant (the "CI"), that SOUNG BAE and JAMES VENTURA had established a hydroponic marijuana grow operation inside a residential house in the Whitestone area of Queens, New York (the "Whitestone Grow House"). The information provided by the CI has proven to be accurate and has been corroborated by independent evidence discovered during the investigation.

4. On or about May 3, 2010, DEA agents conducted surveillance on the Whitestone Grow House and observed that all of the curtains and blinds of the residence were shut. In one window on the second floor of the Whitestone Grow House, however, DEA agents were able to observe a long, leafy branch pressed up against the window pushing through the curtain. Based on their training and experience, the investigating agents believe that the visible branch was from a marijuana plant. DEA agents also walked around the perimeter of the Whitestone Grow House and detected a distinct odor emanating from the Whitestone Grow House. Based on their training and experience, investigating agents believe that the odor they detected was the type of odor generated by growing hydroponic marijuana.

5. On the same day, DEA agents observed a black 2001 Acura CL sedan parked behind a locked wooden fence in the driveway of the Whitestone Grow House. A commercial database search revealed that the Acura sedan was registered to the home address of SOUNG BAE in Mount Vernon, New York.

6. On or about May 4, 2010, DEA agents conducted surveillance on the Whitestone Grow House and observed that the wooden gate enclosing the driveway was open. Through the open gate, DEA agents were able to observe part of the backyard of the Whitestone Grow House and observed a potted plant in that backyard area. Based on their training and experience, the investigating agents believe the potted plant was a marijuana plant.

7. On the same day, DEA agents observed the 2001 black Acura sedan arrive at the Whitestone Grow House and pull into the driveway. An Asian male, subsequently identified as SOUNG BAE, was observed getting out of the Acura sedan and entering the Whitestone Grow House.

8. On or about May 10, 2010, DEA agents conducted surveillance on the Whitestone Grow House and once again observed BAE's black Acura sedan parked in the driveway. DEA agents walked the perimeter of the Whitestone Grow House and again detected the odor of marijuana emanating from the Whitestone Grow House.

9. On the same day, DEA agents observed a black 2001 BMW X5 sedan park directly in front of the Whitestone Grow House.

The BMW sedan was registered to JAMES VENTURA and was being driven by a female subsequently identified as VENTURA's wife. Agents subsequently observed JAMES VENTURA exit the passenger side of the BMW sedan and enter the Whitestone Grow House. Later in the same day, agents observed JAMES VENTURA return to the Whitestone Grow House carrying a small plastic bag. Approximately an hour after entering the Whitestone Grow House with the bag, VENTURA was observed leaving the Whitestone Grow House carrying a large brown paper grocery bag. VENTURA was carrying the brown paper bag carefully on its side and gently placed the bag inside the trunk of his BMW sedan. Based on their training and experience, the size of the bag and the manner in which VENTURA appeared to be carrying the bag, investigating agents believe that VENTURA was carrying a tray containing marijuana plants that were being transported to another location.

10. DEA agents continued to follow VENTURA and observed VENTURA and his wife drive to their home residence in Flushing, New York. Upon reaching his home, VENTURA carefully removed the large brown paper bag from the trunk of his BMW sedan, carried the bag on its side and brought the bag into the residence. Based on their training and experience, the size of the bag and the manner in which VENTURA appeared to be carrying the bag, investigating agents believe that VENTURA was carrying a tray containing marijuana plants.

11. On or about May 10, 2010, DEA agents conducted surveillance on the Whitestone Grow House and observed SOUNG BAE back his black Acura sedan out of the driveway and depart the area. A short time later, DEA agents observed JAMES VENTURA arrive at the Whitestone Grow House. VENTURA used a key to unlock the door and entered the Whitestone Grow House carrying a light brown backpack that appeared to be empty. Approximately ten minutes later, VENTURA exited the Whitestone Grow House and used his key to lock the door. When VENTURA exited the residence he was carrying the same light brown backpack, which was now bulging and appeared to be full. DEA agents observed VENTURA walk down the street and enter the passenger side of a dark colored Jeep Grand Cherokee. VENTURA carried the backpack into the vehicle with him. On the same day, DEA agents walked the perimeter of the Whitestone Grow House and detected the odor of marijuana emanating from the Whitestone Grow House.

12. DEA agents continued to follow VENTURA and observed him arrive at his home residence in Flushing. The Jeep stopped briefly in front of VENTURA's house to let out its passenger (VENTURA) and then departed the area. Based on their training and experience and the investigation that has been conducted thus far, investigating agents believe that VENTURA was transporting narcotics and/or narcotics proceeds from the Whitestone Grow House to his home residence.

13. On or about May 24, 2010, DEA agents again walked the perimeter of the Whitestone Grow House and detected the odor of marijuana emanating from the Whitestone Grow House.

14. A review of utilities records for the Whitestone Grow House revealed that SOUNG BAE requested and began receiving electricity service at the Whitestone Grow House on or about September 5, 2009. The records further revealed that over the course of the last several months, the Whitestone Grow House has used up to five times the amount of electricity as a house of the same size in the same location. Based on my training and experience I know that excessive electricity usage is a clear indication of the presence of a marijuana grow operation because such operations typically use high-intensity discharge lamps and other power-intensive equipment. Thus, in a substantial number of searches I have performed on marijuana grow operations in the past, the electricity usage of the grow houses were unusually high.

15. On May 25, 2010, DEA agents executed a search warrant on the Whitestone Grow House. JAMES VENTURA and SOUNG BAE were present at the Whitestone Grow House when agents arrived to conduct the search. During the search, agents found an elaborate marijuana grow operation that spanned two entire floors of the three-story residence (including the basement and the third floor).

16. The grow operation contained over 100 marijuana plants and a myriad of equipment used in the production of hydroponic marijuana. For example, during the course of the search, DEA agents found approximately 60 marijuana plants growing in a basement room, approximately 69 marijuana plants that were hung to be dried in a second room in the basement (in preparation of being harvested for distribution), approximately 49 plants growing in a room on the second floor and a "nursery" on the third floor that contained approximately 128 growing marijuana plants, numerous marijuana seedlings and several large marijuana mother plants. In total agents found more than 300 marijuana plants growing in the residence. In addition to the plants themselves, DEA agents also found several orange buckets containing harvested marijuana buds, some of which had already been packaged for distribution inside 1/4 pound zip-lock bags. Numerous pieces of equipment associated with marijuana manufacturing and distribution were also located during the search, including, but not limited to: scales, heating sources, power sources, high intensity discharge growing lamps and various pots and packaging materials. A video surveillance camera was also found affixed to the front door of the house, which was connected to a television inside the residence showing the video feed from the camera.

17. DEA agents also found numerous weapons stored in the Whitestone grow house, including a loaded shotgun, a stun gun, multiple knives and two pistol BB guns.

18. Later the same evening, DEA agents executed a search warrant on the home residence of JAMES VENTURA in Flushing, New York. The search revealed various implements of marijuana distribution including, but not limited to: the same type of orange buckets used at the Whitestone Grow House to store harvested marijuana that was ready for distribution, thermometers of the type used to monitor the growth of marijuana plants, zip locks bags and other packaging materials, numerous marijuana-related magazines containing information regarding how to grow and maintain marijuana plants and the same backpack that DEA agents observed VENTURA use to transport marijuana and/or marijuana proceeds from the Whitestone Grow House on May 10, 2010. Agents also found a police scanner. Finally, DEA agents found scraps of marijuana strewn in various locations throughout the residence, and the entire house was permeated with the odor of marijuana. A commercial database search revealed that the house is owned by JAMES VENTURA and his wife, and is currently listed for sale with a price of $838,888.

19. Based on my training and experience, I know that the current retail price for locally-grown marijuana is approximately $5,000 per pound when distributed at the street level and that 300 marijuana plants would produce the equivalent of 100 pounds of

sellable marijuana.[2]  Accordingly, the marijuana being grown by VENTURA and BAE would have resulted in profits of more than $1,500,000.

20. JAMES VENTURA was previously arrested in March 2008 for criminal possession of a controlled substance with intent to distribute, criminal possession of more than 10 pounds of marijuana, criminal possession of an assault weapon, criminal possession of a machine gun, criminal possession of five or more loaded firearms and criminal possession of a firearm after a previous conviction.  These charges are still pending and the defendant is currently released on bond.  VENTURA was also convicted in 2007 for attempted aggravated harassment in the second degree and an order of protection was issued as a result of this conviction.

---

[2]  These numbers reflect conservative estimates based on my previous experience.  The actual value and weight of sellable marijuana produced by the marijuana plants seized in this case will depend on the potency level of tetrahydrocannabinol ("THC").

WHEREFORE, your deponent respectfully requests that the defendants be dealt with according to law.

JEFFREY SENN
Special Agent
Drug Enforcement Administration

Sworn to before me this
26th day of May, 2010.

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK